UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LDC, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| SNAPOLOGY JEWELRY, LLC | : | PLAINTIFF DEMANDS TRIAL BY JURY |
| | : | |
| Defendant. | : | |

**COMPLAINT**

Plaintiff, LDC, Inc. ("LDC"), brings this action against defendant, Snapology Jewelry, LLC ("Snapology"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action (a) to establish ownership of the intellectual property rights and proprietary rights related to jewelry designs that rightfully belong to LDC, the creator, designer, developer, inventor, author, and owner of the rights to the jewelry; (b) to remedy various breaches of contract and promises made by Snapology; and (c) to obtain equitable, declaratory, injunctive, and monetary relief from and against Snapology.

**PARTIES**

2. LDC is a Rhode Island corporation with its principal place of business in East Providence, Rhode Island. LDC designs, manufactures, and sells a full line of unique and high-end fashion jewelry and accessories, which are sold at high-end boutiques, jewelry stores, and department stores.

3. Upon information and belief, Snapology is a Michigan limited liability company with its principal place of business in Fruitport, Michigan.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under federal law, including the Copyright Act, 17 U.S.C. § 101 *et seq*.

5. This Court has supplemental jurisdiction over the state law claims asserted by LDC under 28 U.S.C. § 1367(a).

6. In addition, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because of diversity of citizenship between the parties and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has personal jurisdiction over Snapology because it has sufficient minimum contacts with Rhode Island to provide this Court with jurisdiction, including Snapology's continuous, systematic and routine communications, business contacts, meetings and transactions with LDC in Rhode Island and because Snapology's conduct was directed at and has caused harm to LDC in Rhode Island. Through such conduct, Snapology has purposefully availed itself of the privileges of conducting business in Rhode Island, and when engaging in such conduct, should reasonably have perceived that it would be subjected to this Court's jurisdiction.

8. Venue is proper under 28 U.S.C. § 1391(b) and (c), because events giving rise to this action occurred in this forum and LDC suffered harm in this forum.

## FACTS

### The Parties' Design/Build Contract

9. Snapology purports to have originated the concept of an interchangeable jewelry product to be called "Snapology Jewelry."

10. In November 2014, Snapology contacted LDC in the hopes of finding a manufacturing partner with whom it could arrange to design and produce jewelry designs for the Snapology Jewelry line of jewelry. Snapology showed LDC early-stage CAD drawings of rudimentary design concepts for Snapology Jewelry.

11. At this time, Snapology and LDC entered into an oral agreement whereby LDC would create and manufacture jewelry designs for the Snapology Jewelry line of jewelry (the "Snapology Designs").

12. Under the terms of the parties' agreement, Snapology and LDC agreed to two stages of work: stage one involved the design and creation of the Snapology Designs by LDC; stage two involved the manufacturing of the Snapology Designs by LDC. Thus, pursuant to the parties' form of design/build agreement (the "Design/Build Contract"), LDC would serve both as the designer and, later, as the manufacturer of the Snapology Jewelry line of jewelry, using the Snapology Designs it created.

13. LDC charged Snapology significantly less than it otherwise would have for the stage one design work, based on Snapology's promise and the parties' discussions, understanding and agreement of a long-term relationship whereby LDC would obtain lucrative payments during and through its future involvement in the ongoing stage two manufacturing work.

**The Creation of the Snapology Designs**

14. Upon commencement of the parties' Design/Build Contract, LDC began preparing design concepts and samples for the Snapology Designs.

15. The parties' had ongoing discussions concerning LDC's development of the Snapology Designs and the Snapology Jewelry project throughout the remainder of 2015.

16. Throughout the design phase, Snapology repeatedly asked LDC to make minor modifications to certain of LDC's jewelry designs. Each time, at great time and expense to LDC, LDC made these modifications and delivered revised samples to Snapology. Snapology's repeated modification requests needlessly delayed the design phase.

**Snapology's Initial Purchase Order Under the Design/Build Contract**

17. On September 11, 2015, Bryan Heiss, Snapology's co-founder and CEO, sent a commitment letter to LDC. In that letter, Mr. Heiss stated: "Snapology Jewelry is excited to partner with LDC on launching our line of interchangeable jewelry. Once all the samples have been completed from the factories, we are prepared to place orders in October 2015." Mr. Heiss provided a list of conservative projections of six initial orders/reorders through April 2016.

18. On December 4, 2015, Mr. Heiss sent an email to LDC placing an initial purchase order for the Snapology Jewelry pursuant to the parties' Design/Build Contract (the "Initial Purchase Order"). Through that email, Snapology memorialized its commitment to purchase the items and quantities listed in the attached Initial Purchase Order.

19. Among other terms, Snapology committed to a 50% down payment, with the balance to be paid 30 days after delivery.

20. Following Snapology's Initial Purchase Order, LDC placed orders for the manufacture of the Snapology Designs with its Chinese supplier.

21. Snapology's requests for endless modifications continued during the manufacturing phase. As during the design phase, Snapology's repeated modification requests needlessly complicated and delayed manufacturing and caused LDC's relationship with its Chinese supplier to suffer considerably.

22. On February 1, 2016, LDC invoiced Snapology for the items and quantities requested in the Initial Purchase Order (the "Invoice").

23. In total, LDC invoiced Snapology for approximately 7,264 items ordered at a price of $28,246.40 under the Initial Purchase Order. The Invoice reflected a balance due of $13,246.40 on the original amount of $28,246.40 after application of a $15,000.00 down payment by Snapology.

24. As authorized under the Initial Purchase Order, and as contemplated by the Design/Build Contract, LDC made several installment deliveries of the jewelry items during February 2016.

25. LDC's Invoice and its shipping pick lists each provide that "ABSOLUTELY NO RETURNS WILL BE ACCEPTED WITHOUT AN RMA" and that "ANY DISCREPANCIES MUST BE CLAIMED WITHIN 5 DAYS OF RECEIPT OF GOODS."

26. In total, LDC delivered approximately 3,502 out of the approximately 7,264 items ordered by Snapology.

**Snapology's Improper and Bad Faith Conduct**

27. Following receipt of the first installment, Snapology claimed that it was unhappy with certain jewelry items within the installment. Snapology then engaged in various improper and bad faith conduct, including: (a) failing to follow LDC's instructions regarding returns as set forth in LDC's Invoice and shipping pick lists; (b) failing to provide LDC timely or seasonable notice of rejection or revocation of acceptance; (c) failing to give LDC an opportunity to cure any alleged nonconformities despite LDC's adequate assurances; (d) refusing to pay the $13,246.40 balance due on the Initial Purchase Order; (e) purporting to cancel the parties' entire contract; (f) taking the Snapology Designs to another manufacturer despite LDC's adequate assurances; and (g) all the while continuing to exercise ownership and control over the allegedly defective jewelry. Moreover, despite purporting to cancel the parties' entire contract, Snapology

accepted allegedly nonconforming installments while aware of their allegedly defective nature and demanded performance for future installments.

28. Based on Snapology's material breaches, LDC withheld delivery of the remaining undelivered jewelry items.

29. Upon information and belief, Snapology concocted the defective jewelry scenario as pretext to end its relationship with LDC in favor of a cheaper manufacturer and to avoid its payment obligations to LDC.

30. Moreover, upon information and belief, at some point Snapology filed a patent application comprising or based upon the Snapology Designs.

31. Thereafter, in May and June 2016, LDC demanded payment from Snapology for the balance due on the Initial Purchase Order. Each time, Snapology failed and refused to make payment without explanation or justification.

32. On June 14, 2016, LDC, in writing, communicated to Snapology that LDC is the sole creator, designer, inventor, author, and owner of the rights to the Snapology Designs and all of their intellectual property rights, including without limitation all copyright rights.

33. On June 14, 2016, LDC, in writing, expressly rescinded, revoked and terminated any license that may have existed between LDC and Snapology, including any license granting any right to do or authorize the reproduction, distribution, adaptation, display or exploitation of any jewelry design created by LDC or any jewelry piece embodying LDC's designs.

34. Any such license—the existence of which LDC does not concede—was voided when Snapology materially breached and wrongfully cancelled the parties' Design/Build Contract and exceeded the scope of any license from LDC by failing to fully pay on the Initial

Purchase Order and by manufacturing and selling the Snapology Designs without LDC's involvement and further compensation.

35. On June 14, 2016, LDC, in writing, demanded that Snapology immediately file all necessary documents with the United States Patent and Trademark Office to expressly abandon any patent application to the extent any patent application filed by Snapology is comprised of or based on LDC's designs or inventions.

36. On June 28, 2016, Snapology, acting through its attorney, expressly repudiated LDC's authorship and ownership of the Snapology Designs and all of their intellectual property rights, including all copyright rights. At the same time, Snapology, through its attorney, purported to give "additional" notice of Snapology's rejection and/or revocation of acceptance.

37. On July 8, 2016, LDC, in writing, again informed Snapology that LDC is the sole owner of all intellectual property rights in the Snapology Designs, including without limitation all copyright rights, and that given Snapology's breaches and failure to pay, LDC rescinded, revoked and terminated any license that may have existed between LDC and Snapology with respect to the Snapology Designs, or any other jewelry, authored, created, conceived of or designed by LDC, or any other jewelry embodying LDC's designs.

38. On July 8, 2016, LDC, in writing, also informed Snapology that Snapology has no right to reject or revoke its acceptance of the jewelry or to cancel the parties' contract, and that, even if it did, Snapology's attempted rejection or revocation of acceptance was ineffective and untimely.

39. Additionally, on July 8, 2016, LDC, in writing, again demanded that Snapology expressly abandon any patent application comprised of or based on LDC's designs or inventions.

40. During July 2016, Snapology, acting through its attorney, on several occasions, orally and in writing, expressly repudiated LDC's authorship and ownership of the Snapology Designs and all of their intellectual property rights, including all copyright rights.

41. As of this date, despite the prior express rescission, revocation and termination of any license that may have previously existed, the Snapology Designs embodying LDC's independent designs referenced above continue to be reproduced, distributed, adapted, displayed and exploited either directly by Snapology or through the authorization of Snapology in direct contravention of LDC's demand.

42. As of this day and after the above-mentioned communications, Snapology, either directly or through intermediaries, has copied, distributed, publicly displayed, adapted and/or exploited LDC's works in violation of its exclusive rights under 17 U.S.C. § 106.

**COUNT I**
**(Declaratory Judgment as to the Snapology Designs)**

43. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

44. An actual controversy exists between LDC and Snapology as to the true owner of the intellectual property rights and other ownership rights to the Snapology Designs.

45. LDC is the sole creator, designer, developer, inventor, author, and owner of the Snapology Designs, including without limitation as those words are defined under 17 U.S.C. § 101, *et seq*. and 35 U.S.C. § 100, *et seq*., and all intellectual property rights related to the Snapology Designs belonged to LDC at the Snapology Designs' inception and continue to belong to LDC.

46. LDC rescinded, revoked and terminated any copyright, patent or other license that may have existed between LDC and Snapology, including any license granting any right to do or

authorize the reproduction, distribution, adaptation, display or exploitation of any jewelry design created by LDC or any jewelry piece embodying LDC's designs no later than June 14, 2016.

47. In the alternative, LDC is a joint creator, designer, developer, inventor, author, and owner of the Snapology Designs and all intellectual property rights related to the Snapology Designs.

48. Snapology has repudiated LDC's authorship and ownership of the Snapology Designs and all of their intellectual property rights, including all copyright rights, and Snapology claims that it is the creator and owner of the Snapology Designs.

49. LDC has no adequate remedy at law.

50. LDC seeks a judicial declaration of the parties' rights and responsibilities.

**COUNT II**
**(Breach of Contract)**

51. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

52. As set forth above, LDC and Snapology entered into a two-stage Design/Build Contract with respect to the design and manufacture of jewelry designs for the Snapology Jewelry line of jewelry, i.e., the Snapology Designs.

53. LDC charged Snapology significantly less than it otherwise would have for the stage-one design work, based on the parties' discussions, understanding and agreement of a long-term stage-two manufacturing relationship.

54. As set forth above, Snapology wrongfully reneged on its agreement of a long-term manufacturing relationship and has thereby breached the parties' Design/Build Contract by replacing and failing to involve LDC in the manufacturing of the Snapology Designs, thus depriving LDC of the fair market value of its stage-one design-services as well as its expectancy in profits to be earned in the future during the stage-two manufacturing.

55. Additionally, as set forth above, pursuant to the parties' Design/Build Contract, LDC and Snapology contracted for the sale of jewelry designed and manufactured by LDC.

56. The agreed upon value under the Initial Purchase Order was $28,246.40.

57. As set forth above, Snapology unjustifiably refused to pay for the jewelry, wrongfully rejected and/or revoked its acceptance of the jewelry, and wrongfully cancelled the parties' contract as a whole.

58. Despite several demands by LDC, Snapology has failed and refused to pay the $13,246.40 balance due on the parties' Initial Purchase Order.

59. As a result of Snapology's breaches of contract, LDC has been damaged thereby.

**COUNT III**
**(Quantum Meruit)**

60. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

61. As set forth above, LDC provided valuable services to Snapology.

62. Snapology accepted the services provided to it by LDC and benefited from those services.

63. Snapology has failed and refused to pay LDC the full value of the services referenced herein.

64. As a result of the conduct described above, Snapology has been unjustly enriched at the expense of LDC by maintaining valuable funds to which LDC is legally entitled.

65. It would be inequitable to allow Snapology to retain the value of this benefit without properly compensating LDC for the value of the services performed.

66. Snapology should be required to disgorge all monies, profits, and gains which it obtained or will unjustly obtain in the future at the expense of LDC, and a constructive trust should be imposed for the benefit of LDC.

**COUNT IV**
**(Unjust Enrichment)**

67. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

68. As set forth above, LDC conferred a benefit on Snapology by providing it valuable goods and intellectual property.

69. Snapology accepted and retained LDC's valuable goods and intellectual property, and used the goods and intellectual property to its own advantage and at LDC's expense.

70. Snapology has been and continues to be unjustly enriched by profiting from the wrongful conduct described herein. In particular, Snapology has made wrongful use of LDC's intellectual property by asserting authorship, inventorship and/or ownership, and deriving an unjust benefit from utilizing these property rights and from commercially exploiting LDC's works and inventions. It would be inequitable for Snapology to retain these benefits under these circumstances.

71. LDC has incurred, and continues to incur detriment in the form of loss of money and property as a result of Snapology's wrongful use of LDC's intellectual property and intellectual property rights. The intellectual property and the intellectual property rights are unique and there is no adequate remedy at law.

**COUNT V**
**(Promissory Estoppel)**

72. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

73. As set forth above, the parties' entered into a design/build arrangement, whereby LDC would serve both as the designer and, later, as the manufacturer of the Snapology Jewelry line of jewelry, using the Snapology Designs it created.

74. As set forth above, Snapology induced LDC to charge significantly less than it otherwise would have for the design work, based on the promise of a long-term manufacturing relationship.

75. In performing the initial design work for a significantly reduced fee, LDC reasonably relied upon Snapology's promise to LDC's significant detriment.

76. As a foreseeable consequence of its reasonable reliance on Snapology's promise, LDC has been damaged thereby in an amount to be determined at trial.

## COUNT VI
## (Breach of the Covenant of Good Faith and Fair Dealing)

77. LDC repeats and realleges the foregoing paragraphs as if fully set forth herein.

78. LDC and Snapology entered into a valid contract wherein LDC has discharged all of the obligations the contract imposed upon it.

79. Applicable law implies a covenant of good faith and fair dealing for all contracts entered into in the state in which the contracts were executed.

80. Snapology has breached the covenant of good faith and fair dealing by (a) asserting ownership of the intellectual property rights and proprietary rights related to the Snapology Designs; (b) unjustifiably refusing to pay for the jewelry manufactured by LDC; (c) wrongfully rejecting and/or revoking its acceptance of the jewelry; and (d) wrongfully cancelling the parties' contract.

81. As a result of Snapology's breaches of the implied covenant of good faith and fair dealing, LDC has been damaged thereby.

## RELIEF REQUESTED

WHEREFORE, LDC requests that this Court enter judgment in its favor on each Count and against Snapology and grant the following relief:

A. Damages in an amount to be determined at trial;

B. A declaratory judgment that:

i. LDC was and is the sole creator, designer, developer, inventor, author, and owner of the Snapology Designs, and all intellectual property rights related to the Snapology Designs, including without limitation as those words are defined under 17 U.S.C. § 101, *et seq*. and 35 U.S.C. § 100, *et seq*.;

ii. All intellectual property, and all of the rights associated with the ownership of that intellectual property, with respect to the Snapology Designs vested in LDC at their inception, including without limitation all rights under 17 U.S.C. § 101, *et seq*. and 35 U.S.C. § 100, *et seq*., and specifically including, without limitation, those rights provided under 17 U.S.C. § 106.

iii. Any license that may have existed between LDC and Snapology with respect to the Snapology Designs, or any other jewelry, authored, created, conceived of or designed by LDC, or any other jewelry embodying LDC's designs was rescinded, revoked and terminated no later than June 14, 2016;

iv. Snapology has no right to sell, manufacture, market, distribute, use, or exploit the Snapology Designs or any other jewelry embodying LDC's designs;

v. In the alternative, LDC is a joint creator, designer, developer, inventor, author, and owner of the Snapology Designs and all intellectual property rights related to the Snapology Designs; and

vi. In the alternative, if LDC is deemed a joint author and owner of the Snapology Designs, Snapology and LDC shall account to each other for all revenues and royalties, past and future, received as a result of the exploitation

of the Snapology Designs and all intellectual property rights related to the Snapology Designs.

C. A preliminary and permanent injunction prohibiting Snapology from selling, marketing, manufacturing, using, or exploiting the Snapology Designs or any other jewelry embodying LDC's designs;

D. Order Snapology to sign and file the requisite documents with the United States Patent and Trademark Office to expressly abandon any patent application comprised of or based on LDC's designs or inventions;

E. In the alternative, order Snapology to sign and file the requisite documents to correct inventorship of any patent application comprised of or based on LDC's designs or inventions by naming LDC as a co-inventor;

F. An accounting to determine the revenues and royalties, past and future, received as a result of Snapology's exploitation of the Snapology Designs;

G. Award LDC its costs, expenses and reasonable attorneys' and experts' fees;

H. Award LDC prejudgment interest according to proof;

I. Retain jurisdiction of this action to ensure full compliance; and

J. Award LDC such other and further relief, including equitable relief, as the Court deems just and appropriate.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE**

Respectfully submitted,

Plaintiff,
LDC, INC.
By Its attorneys,

/s/ Eric E. Renner
Eric E. Renner (#7481)
Renner Law, LLC
10 Dorrance Street, Suite 700
Providence, RI 02903
Phone: 401-404-5251
Fax: 401-404-5285
erenner@rennerlawllc.com

Date: August 18, 2016